## Pratt & Reath *versus* The H. M. Richards Jewelry Co.

69    53
26 SC ²652

69   53
41SC ¹485

1. If the tendency of evidence offered, be to prove a fact, it is not the province of the court to say whether it would actually prove it. If with other facts in the case, it tend to establish a result, it should be admitted.

2. Richards subleased to Pratt, a room in a building for nine years, the term having fifteen months to run. Pratt wrote to Richards that he had failed, and offered to surrender; about the same time Richards surrendered to his landlord. Pratt received no reply, no claim for rent was made for seven years;—evidence that after Richards surrendered, he delivered possession to his landlord, who collected the rents from other tenants of the building;—that Pratt did not occupy the room afterwards, &c., was admissible in an action for rent by Richards against Pratt, on the question of surrender by Pratt.

3. If the surrender was an accomplished fact, the Statute of Frauds did not apply: the lessor holding the premises, would be estopped from claiming rent.

4. Richards could not claim from Pratt, rent accruing after Richards's surrender.

March 3d 1871. Before THOMPSON, C. J., AGNEW, SHARS-WOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 7, to July Term 1870.

This was an action of debt, brought April 29th 1868, by the H. M. Richards Jewelry Company against Dundass T. Pratt and Benjamin B. Reath, trading as Pratt & Reath, to recover 15 months' rent of a room in the building No. 173 Broadway, New York.

On the 24th of September 1852, James E. Cooley leased to H. M. Richards the four stories above the first story of the above building, with the stairway and passage through the first story, for nine years and six months from November 1852, at a rent of $4500, payable quarterly. The lease contained this stipulation:

" And it is agreed that if any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said party of the first part to re-enter the said premises, and the same to have again, repossess, and enjoy ; and the said party of the second part doth covenant to pay to the said party of the first part the said yearly rent as herein specified."

On the 1st of February 1853, Richards leased to the defendants the front room in the third story of the building for " nine years and three months from the first day of February 1853, at the yearly rent of $1500, to be paid in equal quarterly payments. And it is agreed that if any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said party of the first part to re-enter (after ten days' notice to the parties of the second part) the said premises, and to remove all persons therefrom. And the said party of the second part doth covenant to pay to the said party of the first part the said yearly rent as herein specified." * * *

On the 19th of September 1857, H. M. Richards assigned to the plaintiff the lease from Cooley and all his (Richards's) estate, in the building.

On the trial before Hare, P. J., January 26th 1870, the plaintiffs having given the foregoing leases and assignment in evidence, closed.

The defendants called Dundass T. Pratt, who said : " In the spring of 1861, Pratt & Reath were in business in Philadelphia ; we had previously sublet the room rented by us from plaintiffs to a firm which occupied it till February 1st 1861 ; the plaintiffs had been in the habit of drawing on us by their agent, Mr. Richards, for the rent as it fell due quarterly ; our firm suspended 10th of March 1861, and we notified Mr. Richards, March 22d 1861, by this letter, offering to surrender the possession of the premises :

[Pratt *v.* Richards Jewelry Co.]

" ' Philadelphia, March 22d 1861.

Mr. H. M. Richards, New York:

Dear Sir,—You probably have been informed that our firm has suspended.    We are yet bound to retain possession of front office, third floor, 173 Broadway, for one year longer, and we submit whether it might not be to your interest to release us from the remaining year and take the letting of the office and its rents into your hands.    Please let us hear from you.

Yours truly,

PRATT & REATH.'

" On the 16th of April we wrote as follows:—

" We wrote you some time since in regard to your taking the third floor office, 173 Broadway, off our hands for the year that remains.    We are too distant to manage the renting of it ourselves, and our own affairs are such that we think it to your advantage to have the collection of the rents.    Under this belief we make the proposals, shall be glad to have you respond as early as possible.'

" We received no demand for the rent from 1st February 1861 till the day this suit was brought—a lapse of seven years."

And being cross-examined he said: " We have never had the means of paying this rent since, and received no reply to these letters; I made efforts to rent the premises till I heard what had passed between the company and their landlord; I heard Richards was in difficulties and that he had surrendered to his landlord; when I heard this I ceased my efforts; we made no offer to pay the rent at any time; we had not the means; I heard of the report of Richards's difficulties, and that he had surrendered to his landlord in July 1861."

The depositions of W. R. Alling and George A. Leavitt, taken before commissioners in New York, were offered in evidence.

Alling testified that the plaintiffs went out of business in the early part of 1861; about that time they had become insolvent; about August 1st 1861, the plaintiffs requested witness's firm to pay their rent to G. A. Leavitt, attorney and agent of Cooley, and witness then received notice that the owner of the premises was to collect the rents, and that his firm were to be thereafter Cooley's tenants; the persons occupying the part leased to defendants moved out about May 1st, and afterwards the key was in Richards's office; the plaintiffs abandoned the building about the spring of 1861; the plaintiffs collected the rents from November 1858, until May 1861; G. A. Leavitt collected them after that.

G. A. Leavitt testified that the plaintiffs surrendered the premises to Cooley in July 1861.

" The front room in the third story of that building was vacant in the month of May or June 1861; I had authority to let it

whenever it was vacant and to any person I chose; I had authority from June or July 1861; I rented it to a man named Clapp; previous to this time the H. M. Richards Jewelry Company was the tenant of the whole upper part of the building; they gave it up in June or July 1861. * * * Richards took me around the building and put me in possession of it,

The third cross-interrogatory was: "If to the defendant's third interrogatory you have stated that the surrender of the lease and assignment of the rents therein assigned, took place, state particularly the names of the tenants of the plaintiffs at that time; the portions of the buildings each tenant respectively occupied; what rents they paid; how much they owed, and what rents and from whom due were so assigned. If either the surrender of the lease or the assignments of the rents were in writing, produce them, and annex them to your deposition; state in whose presence they or either of them were executed, and by whom. Was any surrender ever made by the plaintiffs, or any person acting under their authority, to James E. Cooley or any person of the premises rented by defendants during the continuance of their term, viz., from February 1st 1853 to May 1st 1862? Did the said plaintiffs ever assign to James E. Cooley or any person the rent due by the defendants for the five last quarters of their term, viz., from February 1st 1861 to May 1st 1862."

In answer to this cross-interrogatory the witness gave the names of the tenants, &c., and said:—

"I do not know how much they owed. The assignment which I will produce will show what rents were assigned. The only paper I have is the assignment referred to. The paper is signed by the H. M. Richards Jewelry Company. That is all I remember about it.

"In addition to the paper referred to, Mr. Richards took me through the building, and put me in possession of it. He introduced me to all the tenants who were there. This was in June or July 1861. Previous to this time I had nothing to do with the building except to collect the rent of the upper part of the building from the plaintiffs, whose lease expired in May 1862. From the time of the surrender mentioned, in June or July 1861, to May 1862, I acted as landlord of the premises. The whole upper part of the building as rented by the plaintiffs was put in my possession on the time mentioned, according to the paper and the personal surrender. The paper is the only assignment I have. But in giving me possession of the building at the time mentioned, I should think he did assign the rent due by the defendants.

"Mr. Richards put me in possession of that building from 1st May 1861 to 1st May 1862, and any rents accruing during that period I should certainly have collected, if I could. For

[Pratt v. Richards Jewelry Co.]

the quarter previous to 1st May 1861, I considered that covered· by the assignment, both written and personal. The assignment was made to me as agent for James E. Cooley. I think it was so expressed in the paper. Messrs. Pratt & Reath, the defendants, were not tenants during those five quarters; that is, were not occupants."

The plaintiffs objected to the admission of the answer to the 3d cross-interrogatory. The answer was excluded and a bill of exceptions sealed.

The court instructed the jury " to find for the plaintiffs for the full amount of their claims, as there was no evidence of a surrender."

The verdict was for the plaintiffs for $2956.65.

The defendants removed the case to the Supreme Court, and assigned for error the rejection of the evidence offered and the charge of the court.

*S. Dickson* and *F. Carroll Brewster*, Attorney-General, for plaintiffs in error.—A lease of less than three years may be surrendered without writing: McKinney v. Reader, 7 Watts 123; Kiester v. Miller, 1 Casey 481.

The New York Statute of Frauds, which governs the surrender in this case, applies only to estates other than leases for a term " exceeding one year " (2 Rev. St. p. 134, § 6), and consequently the parol surrender here was perfectly valid and good. In all the statutes on the subject, requiring assignments or surrenders to be in writing, surrenders by operation of law have been excepted: Thompson v. Cook, 2 B. & A. 119.

The doctrine of surrender by operation of law has been applied to any act done by the landlord, which creates a new interest in a third party or in himself, inconsistent with the tenant's former interest; provided the tenant and third party or landlord concur in such act and the former actually gives up possession in consequence of it: Dodd v. Acklom, 6 M. & Gr. 672; Davison v. Gent, 1 H. & N. 744; Grimman v. Legge, 8 B. & C. 324; Gore v. Wright, 8 Ad. & Ellis 118; Nickells v. Atherstone, 10 Q. B. 944; McDonnell v. Pope, 9 Hare 705; Doe v. Abp. of York, 6 East 86; Forquet v. Moore, 7 Ex. 870; Whitcher v. Hall, 5 B. & C. 269; Whitehead v. Clifford, 5 Taunton 518; Phene v. Popplewell, 12 C. B. N. S. 334; Lyon v. Reed, 13 M. & W. 310; Greider's Appeal, 5 Barr 422. The defendants had the right to expect that plaintiffs would accept a beneficial act: Wilt v. Franklin, 1 Binney 502.

If the Statute of Frauds does not apply, the answer was evidence to go to a jury, and this surrender was not within the provision of the New York statute. "The unexpired term for a year in a lease for three years may be surrendered by parol. The

[Pratt *v.* Richards Jewelry Co.]

statute (2 Rev. St. p. 134, § 6) relates to the estate of the tenants, and not to terms of the instrument by which it is created:" Smith *v.* Devlin, 23 N. Y. 363.

*J. B. Thayer* and *E. S. Miller*, for defendants in error.—The *surrender* should be established by *unequivocal* evidence: Brandon *v.* Bannon, 2 Wright 63; Taylor's Landlord and Tenant 373. "Where there is an express contract, the law will not imply one:" Cook *v.* Jennings, 7 T. R. 381. The words, "by operation of law," are to be construed a surrender in law, by taking *a new lease*, which being in writing was of equal notoriety with a surrender in writing: McGinnis *v.* McCullough, Gilbt. R. 236; 1 Wms. Saund. 236, note b; Lyon *v.* Reed, 13 Mees. & Welsby 285. There must be unequivocal evidence of such a change of possession as to render it impossible for the tenant to use or occupy the premises: Whitehead *v.* Clifford, 5 Taunton 518; Graham *v.* Whichelo, 1 Crompt. & Meeson 188; Huddleson *v.* Johnson, McClel. & Y. 141; Mollett *v.* Brayne, 2 Campbell 103; Redpath *v.* Roberts, 3 Esp. N. P. C. 220; Shieffelin *v.* Carpenter, 15 Wend. 400; Lawrence *v.* Brown, 1 Seldon 394.

The opinion of the court was delivered, October 9th 1871, by

Thompson, C. J.—It is not within the province of a court to say whether a given offer would actually prove the fact it was offered to prove, provided its tendency be to prove the fact. If it, with other facts in the case, tend to establish a result material to be established by the party offering it, it should be admitted, and go to the jury. It is for them to pass on it under instructions from the court. *Respondeant facto juratores.*

In the case in hand the letters of the defendants transmitted by mail to their landlord, H. M. Richards, offering to surrender the room in the building he had leased from Cooley and to them, his silence, and non-claim for rent for seven years, was, with the testimony of Leavitt, important to go to the jury on the question of a surrender in fact by Richards, the plaintiffs' landlord, and its acceptance by the paramount landlord, Cooley. There was proof that the plaintiffs had failed and surrendered to H. M. Richards, and that he surrendered to Cooley. Leavitt, whose testimony was rejected, says: "Richards took me through the building and put me in possession." "The whole upper part of the building was put in my possession at the time mentioned (June or July 1861), according to the paper and personal surrender." "Mr. Richards put me in possession of that building from 1st of May 1861 to 1st of May 1862." "From the time of the surrender mentioned, in June or July 1861 to May 1862, I acted as landlord of the premises." "The front room in the third story of that building (the room of Pratt, Reath & Co.) was vacant in the month of

[Pratt v. Richards Jewelry Co.]

May or June 1861. I had authority to let it, whenever it was vacant, to any person I chose." Leavitt was Cooley's agent, not the defendants'. Surely this was evidence on the question of a surrender accepted from defendants by Richards, and a surrender by him to the paramount landlord for himself and for the jewelry company, likewise accepted. If the surrender was an accomplished fact for the time the lease had to run, which was about a year, I cannot see wherein the Statute of Frauds had anything to do with it. If there was a surrender and acceptance, the lessee would be estopped from claiming rent while he held the premises. These plaintiffs are, we think, in this category. If their lease was taken off their hands, what right have they to claim rent for the premises? They were no longer landlords. In fact, their surrender acquitted them of rent, as it did their lessees. Now we say this being the appearance of the case as it is presented here, we think the learned judge should have admitted the testimony, and then both fact and law would have been eliminated properly and satisfactorily. We think the defendants were very likely damaged by the ruling of the learned judge; and that the testimony offered should have been admitted and then probably there would have been no room for the peremptory direction to find for the plaintiffs.

Judgment reversed, and *venire de novo* is awarded.