## McCarthy, Appellant, *v.* Murray.

*Master and servant—Compensation—Evidence—Case for jury.*

In an action against an executrix, who was sole legatee of her husband, to recover compensation for services, where the plaintiff testifies positively, although contradicted by the defendant, that immediately after the decedent's death the defendant promised to pay him the same compensation that he received from the decedent, which was a certain amount per week and a certain stated extra compensation at the end of the year, and the plaintiff's testimony as to the extra compensation, there being no dispute about the weekly wages, is corroborated to some extent by declarations of the executrix, and by the fact that plaintiff did night work as an extra service, the case is for the jury, and if a verdict and judgment is rendered for plaintiff it is error for the court to set it aside and enter judgment for defendant non obstante veredicto.

Argued Oct. 5, 1909. Appeal, No. 243, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 3, Phila. Co., June T., 1903, No. 4,206, for defendant non obstante veredicto in case

of Patrick J. McCarthy v. Elizabeth L. Murray, trading as James J. Murray & Co. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit to recover compensation for services. Before FERGUSON, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $1,005.50. Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*John W. Speckman,* for appellant.

*E. Cooper Shapley,* for appellee.

OPINION BY ORLADY, J., March 3, 1910:

The plaintiff had been employed as a superintendent of a glass manufacturing plant owned and operated by James J. Murray, for nearly two years prior to November 10, 1901, on which date Mr. Murray died. During Murray's life, the plaintiff received a salary of $30.00 per week, which was paid weekly, and it was alleged that he was entitled under an agreement to an additional annual compensation of $500, which was to be paid at the end of each year. After the death of Mr. Murray, the business was conducted by his widow, who was his sole legatee and executrix, and a few days after the husband's death, a conversation took place between the plaintiff and defendant in which it is alleged by the plaintiff, that he was directed to continue in the same relation he had held with Mr. Murray, and with the distinct understanding that his compensation was to be as theretofore. The weekly payments were promptly paid, but a controversy arose as to the $500 item of the claim, and this suit was brought to recover it.

The trial resulted in a verdict for the plaintiff of $1,005.50, which was subsequently set aside by the trial judge, who held that there was no evidence of any promise or agreement on the.

part of Mrs. Murray to pay the extra compensation to the plaintiff for the years 1902 and 1903, and a judgment was entered for the defendant non obstante veredicto. The whole question turns on the sufficiency of the evidence to establish the claim of the plaintiff, and after a careful examination of this record, we are constrained to reverse the judgment, for the reason that there was ample evidence to warrant the jury in returning a verdict in favor of the plaintiff, who testified positively that Mrs. Murray told him the morning after Mr. Murray's death that she would pay him the same salary weekly, and the same extra compensation at the end of every year as he had received before the death of her husband. The defendant testified that Mr. Murray had told her all about the business whenever he came home, and she knew every detail of it. The $500 was to represent an extra salary, the same as had been paid during Mr. Murray's lifetime. The plaintiff further testified that Mr. Murray had paid a special sum to him for twelve or thirteen years prior to his death and was increasing the amount each year. Special services were shown, such as working at nights to nine and ten o'clock and on Sundays. Another witness called for the plaintiff testified that in January, 1903, Mrs. Murray told him on the factory floor, that Mr. McCarthy was so anxious that the business should succeed that he had not drawn his extra salary, or any portion of it since the death of Mr. Murray.

The plaintiff's testimony related to four distinct interviews with the defendant, which, if believed, could only mean that the defendant had promised to pay the amount claimed by him. The defendant admitted having the conversations, but denied the construction placed upon them by the plaintiff, and insisted that she had never made any agreement with the plaintiff to pay him any salary beyond $30.00 a week. The analysis of the testimony as made by the court below, omits some material facts, which to our mind were properly before the jury and had a direct bearing on the case. The rule of law in such cases is quite plain and must be followed. It is not within the province of the court to say, whether certain testimony would actually prove a fact, provided its reasonable

tendency is to prove it.  If it, with other facts in the case, tends to establish a result material to be established by the parties offering it, it should be admitted and should go to the jury.  It is for them to pass on it under proper instructions from the court.  When proof of a fact depends upon oral testimony, it is the province of the jury to decide, under instructions from the court as to the law applicable to the facts, and subject to the salutary power of the court, to award a new trial if they should deem the verdict contrary to the weight of the evidence: Pratt v. Jewelry Co., 69 Pa. 53; Colonial Trust Company v. Getz, 28 Pa. Superior Ct. 619.  If it shall appear that a binding direction for either party would have been proper at the close of the trial the court may enter judgment later, with the same effect, but, on the other hand, if it should appear that there was a conflict of evidence on a material fact, or any reason why there could not have been a binding direction then, there can be no judgment against the verdict subsequently.  The act of 1905 does not disturb the settled line of distinction between the clearly defined provinces of the court and the jury.  The act is capable of usefulness in allowing time for mature consideration, but it should not be carried beyond its legitimate intent: Casey v. Canning, 39 Pa. Superior Ct. 94.  In this case the testimony was directly in conflict; the jury had the right to consider all that was properly before it, as well as the reasonable inferences to be drawn from the testimony.  They had full opportunity of passing upon the credibility of the witness as well as the subject-matter of the testimony, and their conclusion should not be disturbed.

The assignments of error are sustained, the judgment is reversed, the record is remitted to the court below, and judgment to be entered on the verdict.