# Colonial Trust Company of Reading *v.* Getz, Appellant.

*Promissory notes—Alteration—Evidence—Province of jury.*

As notes and bills are intended for negotiation, and as payees do not usually receive them when clogged with impediments to their circulation, there is a presumption that such an instrument starts fair and untarnished, which stands until it is repelled; and a holder ought, therefore, to explain why he took it branded with marks of suspicion which would probably render it unfit for his purpose.

When a promissory note "clearly shows upon its face" that it has been altered in some material part, such as its date or the time or place of payment, it is incumbent on the party producing it and claiming under it to remove the suspicion thus raised as to the genuineness of the instrument by accounting for the alteration. In such a case the note should not be admitted in evidence, except in connection with evidence tending to explain the alteration.

But where it is doubtful upon inspection whether there was or was not an alteration, it is not reversible error to admit the note in evidence, so that the jury may pass upon this preliminary question; but in such case they should be instructed that in the event of their finding that there was an alteration it will be their duty to find that the note was avoided as against the indorser, unless the alteration be shown by the evidence to have been made anterior to or at the time of the indorsement, or with the indorser's consent if made subsequent thereto, or the case be brought within the last clause of sec. 124 of the act of 1901.

In an action upon a promissory note where the sole defense is that the note had been altered after it was indorsed, and no evidence relevant or irrelevant has been given in support of that defense, which brought in question the consideration of a prior original note, or the purpose for which it was given, or the application that was made of its proceeds, evidence that the proceeds of the original note were applied to a payment in which the defendant was interested, is inadmissible.

The admission of irrelevant evidence is not always ground for reversal, but it is so where it has a tendency to draw the minds of the jury from the issue, and to prejudice, confuse and mislead them.

In an action upon a promissory note the issue, under the pleadings, was whether the note was altered in a material part after it was indorsed by defendant. The court instructed the jury that, under the evidence, the question was "whether there was any alteration in the particulars claimed by the defendant before the negotiation of the note, and after it was indorsed by the defendant." This was put upon the ground that the testimony of plaintiff's witness that it was not altered after it came into the plaintiff's hands was uncontradicted. This witness was the officer of the plaintiff company with whom the discount was negotiated by the maker. *Held,* that the instruction was erroneous, inasmuch as it took from the jury the right to pass upon the credibility of the witness.

When proof of a fact depends upon oral testimony, it is the province of the jury to decide under instructions from the court as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if it should deem the verdict contrary to the evidence.

Argued Nov. 17, 1904. Appeal, No. 167, Oct. T., 1904, by defendant, from judgment of C. P. Berks Co., May T., 1903, No. 56, on verdict for plaintiff in case of Colonial Trust Company of Reading v. H. K. Getz. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit upon a promissory note. Before ENDLICH, J

At the trial the following offer was made:

Mr. Jones: Plaintiff offers in evidence note of Walter G. Roland, payable to the order of H. K. Getz, for $665, dated January 29, 1903, payable March 20, 1903, at the Colonial Trust Company, indorsed by H. K. Getz crediting the drawer.

(Note marked "Exhibit A, H. L. C., 10--20--03.")

Mr. Derr: This note is objected to for the following reasons: There are plain evidences of alteration of the note in the following respects:

In the date of January 29, it is evident that the original first figure was a one and has been changed to a two, converting nineteen to twenty-nine. There is, also, evidence of erasure where the abbreviation for the month of March, "Mch.," in the due date is written; there is evidence of some other month or some other word having existed on the paper antecedently to the abbreviation for the month of March having been erased and the month of March substituted therefor.

Also, in the lower left-hand corner is the following: "renewal less $15.00;" this being a reference to a note for the renewal of which this note was given. The note referred to should be offered in connection with this note, or the plaintiff's inability to offer it accounted for, if there is such inability.

The Court: Admitted; bill sealed for the defendant. [1]

Walter G. Roland being examined as witness for plaintiff was asked this question.

"Q. This note appears in the form of an accommodation note. Will you state whether Mr. Getz had any interest in it? A. Yes, sir. Q. State what interest he had in it and how he came to indorse these notes?"

Mr. Derr: How is that relevant? How is it admissible in rebuttal?

Mr. Jones: Mr. Derr stated in his opening that this was an accommodation note and that Mr. Getz was the accommodation indorser and that, therefore, he had no interest in this matter whatever.

The Court: Admitted; bill sealed for defendant. [2]

Mr. Jones: " Q. It has appeared that there were several notes, beginning in 1901 and the renewals continuing up to the note in suit. Now tell the jury how it came about. A. About April, 1901, Mr. Halberstadt had been involved to Mr. Getz and myself very materially; I applied to Mr. Getz for aid and, on this particular occasion, we required $700. I explained to him that we had to pay the insurance of $12,000 for two years in advance to the New York Life Insurance Company. I approached Mr. Getz and he very reluctantly complied, with the understanding that I was to place this note in no national bank, so I applied to the Colonial Trust Company. They said they would take it on one condition, and that was, if I secured the additional indorsement of Mr. O. S. Geiger, which I did. I returned after twelve days of hustling to get Mr. Geiger to aid me. I took the $700 and paid the New York Life Insurance Company for two full years' premiums of $300 apiece, making a total of $600, and to-day, at this very moment, Mr. Getz is enjoying that payment. It was renewed from time to time. Q. The point is that the proceeds of this transaction procured a life insurance which protects Mr. Getz and Mr. Roland? A. Yes, sir. Q. Is that correct? A. Yes, sir. Q. The life insurance on Halberstadt's life? A. Yes, sir. Q. Protects both Mr. Getz and you? A. Yes, sir."

The court charged in part as follows:

The defendant alleges that he is not liable on this note at all because of material alterations which he says were made in this note after the time when he put his name upon it and before the time when it was negotiated, that is to say, when it was passed into the bank and taken by the bank. Those alterations he says consist in two particulars. Now it will be a question for the jury to say whether there was any such alteration after the execution of the note and before its negotiation or not.

[There is no possible inference in this case that there was an alteration of the note after it came into bank; the testimony here excludes any supposition of that kind, and it is not alleged that there was anything of the kind. The question is whether there was any alteration in the particulars claimed by the defendant before the negotiation of the note and after it had been indorsed by the defendant.] [5]

[Now, gentlemen, the law is perfectly clear that if there was no such alteration, that is to say, if the note was not changed in either of the particulars alleged by the defendant after he had put his name to it and before it was negotiated, then the plaintiff is entitled to a verdict for the full amount of its claim.] [6]

Now, was there such an alteration as the defendant contends for or was there not? That question, gentlemen, you will decide under the evidence of this case and in accordance with the weight of the evidence. That is to say, on which side does the testimony incline?—on which side does the evidence preponderate?—that is the question for the jury to pass upon; and the jury will decide every question that arises upon the weight and preponderance of the evidence, and of course not in deference to any theories or suppositions of the parties, however ingenious they may be, unless the jury finds them to be supported by the evidence and the facts of the case. And to be sure, the mere fact that such alterations as are alleged to have been made are possible of accomplishment, the mere fact that it is possible to make alterations in a note that has already been written—a proposition which, of course, cannot be disputed—is not a decisive element in the case. The question for the jury is not the possibility of such a thing, but the question is whether that possibility is converted by the fair preponderance of the evidence into a probability, into the probable truth of the case.

Let us look at those two particulars in which the defendant says this note was changed a little more closely. The defendant says that the date of the note originally was not January 29, but January 19. The defendant himself, if I remember rightly, testifies virtually to that effect. He gives you no reason for so saying, no reason resting either in positive recollection on his part, or supplied by circumstances connected

with the transaction itself which he says he remembers, but he bases his testimony, as I recall it, upon the appearance of the figure " 2 " in the " 29." That figure, it is alleged, indicates that it was changed into a two from a one. That is the testimony of the defendant himself, I think, and of two witnesses who were called upon the stand to testify as experts on behalf of the defendant. They tell you what, in their opinion, the appearance of that figure " 2," as it now stands upon the note, indicates, and they say that it indicates that it was originally a one, and that the upper loop and the tail below were added to it so as to give it the appearance of the figure 2. On the other hand, Walter Roland testifies that the figure never was anything else than what it is now ; and one witness called by the plaintiff, a bookkeeper in one of the banks, I don't remember which, tells you that its appearance indicates no tampering with it. What does its appearance on the note itself indicate to you ? It is for you to decide what these opinions that have been given to you, and this testimony of indications that has been submitted to you, are worth. It is for you to look at the note and to see what this thing really does mean. What is the evidence which the note itself bears upon its face ? And under all the circumstances of the case shown by the evidence, taken in connection with the note, what is the probable truth indicated by the weight of the testimony ? There is, of course, this to be considered by the jury in connection with this matter : It seems to be admitted that this note, whatever it originally was, was intended to renew another note in the Colonial Trust Company for $680, to be reduced by a cash payment of $15.00, which would bring it down to $665. That other note became due on February 2. Now, it is for the jury to consider and it is for the jury to say, and I am not indicating any opinion on the subject one way or the other, whether or not it is likely that the defendant on January 19 signed a note for the renewal of one coming due on February 2, which was two weeks later, or whether or not it is more likely that the defendant signed a note which was to renew one coming due on February 2 on January 29, which was a Thursday, February 2 being the Monday following. The jury ought to take into consideration all the facts of the case which are clear, and try to see what the reasonable

inference from those facts is, and how that inference bears upon the probability of one statement or another statement being borne out. If the testimony of the defendant in this case were positive as a matter of actual recollection on his part that this note as originally drawn bore the date of January 19, and not January 29, the case might probably stand a little different. But I don't understand that to be his contention. The question is whether, from the appearance of this note and from the testimony as to what that appearance indicates, the jury is or is not to say that as a matter of fact this note was dated on January 19, and not January 29 ; and when you come to pass upon that question it is proper and right for you to consider all the probabilities of the case, and apply your common sense as to what it was likely that people in business would do that is consistent with the one theory or with the other. And of course, gentlemen, you will understand that even if the 2 was made up of three strokes, as contended for by the defendant, if there was a 1 there first and that loop and tail were put to it afterwards, changing it from a 1 into a 2, if that was done before the defendant put his name on the note, then the note is all right so far as that matter is concerned. In other words, no change made in the note before the defendant put his name to it can possibly affect his liability.

Now we come to the other proposition. The defendant also says that the date at which the note was to mature when he put his name to it was not March 20, but some earlier date. To induce you to believe that, he relies upon what he argues to you from the appearance of the note itself. He says that it shows an erasure under the letters " Mch.," the abbreviation for March which is used in that note, and I believe, the traces of other marks, writing, as he contends, as having been originally there before that erasure which he claims was made obliterated it. Two of his witnesses —the two, I think, that I referred to before—have explained to you their views on this subject, and it is for you to say whether your inspection of the note, such careful and deliberate examination as you will give to it when you come to your jury room, commends what the defendant contends for in this particular to your conscientious judgment. I ought to add here that of course, in this connection, you will not forget the testimony of one of the plaintiff's

witnesses whom I have already referred to,. who says that so far as that matter of " Mch. 20 " is concerned, the note bears no evidences of having been tampered with.   But all that is for you.   You are not bound by the testimony of any one or more witnesses in the case.   You are to look at the whole evidence, all the facts and all the testimony in the case, in order to come to a just and true conclusion.   But in addition to the appearance of the note, the defendant also swears that the date of maturity of the note when he indorsed it was not March 20, but some other date between February 16 and March 9.   Walter Roland, the other party to the note, swears that the date as now appearing is exactly what it was when the defendant put his name to it.   What is the truth on that point?   There has been considerable discussion to you by counsel concerning the fact that the defendant does not tell you what date was on it. It is true that the defendant does not undertake to say on what date the note as he claims it was written was made payable. You are asked to believe that it was on February 20, but there is no witness who can say that that was the date originally written in this note ; and I don't recall—I may be mistaken about that, but I don't now recall that there was any evidence showing that there was any note coming due on or about February 20 which the defendant was asked to renew.   You will recall that this note was given for the renewal of another earlier note that came due on February 2, and that it was used for that purpose—it was used to take up that note which came due on February 2.   The fact that it is n't possible to give with precision the date which is alleged to have been upon a paper originally, and which is alleged to have been altered, may not be decisive in the minds of the jury against the acceptance of such an alteration, if it is borne out, substantiated by the weight of the testimony in other particulars.   But it is for the jury to consider, in the absence of any testimony attempting to give the date which is alleged to have existed originally, whether or not it is more likely that the defendant, in testifying as he does concerning this note, is confusing it with some other one which he may have been indorsing for Roland, the evidence being that he was indorsing three or four more.

I don't pretend to review the whole of the testimony to the jury ; and of course I have no intention of expressing any opin-

ion as to any of these matters of fact which it is the province of the jury and the jury alone to pass upon. [The jury will remember all the evidence that there has been bearing on these subjects, and in the light of the whole of it decide whether there has been an alteration of this note after its execution and before its negotiation in either or in both of the particulars contended for by the defendant.] [3] If, according to the fair preponderance of the evidence as the jury views it, there was no such alteration, then it will be your duty to find for the plaintiff for $690.37, that being the amount of the note with interest and costs of protest. On the other hand, if, according to the fair preponderance of the evidence as the jury views it, there was an alteration, then that alteration must have been either in the date of the note or in the date of maturity stated in the note or in both. As I have already intimated, in the event of your finding that there was an alteration, I shall ask you to render a verdict specially declaring what you find on that subject, and I have prepared that verdict in such a way that by taking it as it is written, or by striking out one of two clauses, it will present your finding in legal form. You will find that paper marked as "Special Verdict." If you find an alteration in the date of the note only, that is, in this matter of January 19, or January 29, a change from January 19 to January 29, but no change as to the words "Mch. 20," then draw your pen through that second clause in brackets, containing the words "its original date of maturity from some earlier date to Mch. 20." If you find an alteration as to the date of maturity, that is, as to those words "Mch. 20," and not as to the date of the note itself, the "January 29th," then draw your pen through the first clause in the brackets, containing the words "its original date of execution from January 19, 1903, to January 29, 1903." If you find an alteration in both of those particulars, then you can take this paper as it stands without making any changes in it; and in either of those events, you will sign your names to it. But let me impress this upon you, that by adding this paper and having it sent out with you, the court is not intimating any opinion that you ought so to find. The question is submitted to you, and this paper is added simply for the purpose of enabling you to render such a verdict as will put the court in a position to pronounce the proper judgment upon

the facts as you may find them.   If you find that there was no alteration, then you will simply find the amount that I have stated for the plaintiff and disregard this paper altogether.

. Verdict and judgment for plaintiff for $690.37.   Defendant appealed.

*Errors assigned* were (1, 2) rulings in evidence, quoting the bill of exceptions; (3, 5, 6) portions of charge as above, quoting them; (4) that the court erred in not instructing the jury that if they found the note in suit to have been altered they· must, in determining whether the alteration was made before or after the indorsement of the note by the defendant, start with the presumption that the note was altered before the appellant put his name to it.

*Cyrus G. Derr*, for appellant.—An alteration in the date of a negotiable instrument is material, without regard to whether such change affects the time of payment of the paper or not, or hastens or postpones it; suffice it to say, it is not the contract into which the parties have entered.

The alteration of a promissory note in a material respect avoids it even as between the original parties thereto, and it results that upon the trial of an issue involving the question of alteration, or no alteration, evidence showing or tending to show the defendant's interest in the transaction, to which the note relates, is irrelevant.   Therefore the court erred in admitting testimony to show an interest of the defendant in an insurance transaction, to which the note in question was said to be related by intermediate renewals: Frey v. Wessner, 1 Woodward's Decisions, 145.

When the issue to be tried is as to whether a paper after the execution of it by the defendant was altered, there are two facts involved, namely: (1) Was the paper altered; and (2) if altered, was the alteration made after the defendant had affixed his signature?

As to the first of these questions the burden is upon the defendant, and if the alteration appears either to the court, or in a doubtful case to the jury, the presumption arises that the alteration was made after the execution and the burden is put upon the plaintiff of showing the negative, namely:

That the alteration was made before execution, and it follows that these two facts should be submitted to the jury in accordance with the respective presumptions and that simply to submit to the jury the question as to whether there was an alteration of the paper after its execution by the defendant is to ignore the appropriate presumption and is erroneous : Bank v. Coon, 2 Kulp, 134.

If there was an alteration of the note in question made after the indorsement of it by the defendant, the note is avoided thereby whether the alteration was made before or after the subsequent negotiation of the note, and it was erroneous to have limited the question to the interval between the signing of the defendant's name and the negotiation of the note to the plaintiff trust company.

*Richmond L. Jones*, with him *J. Milton Miller*, for appellee.

OPINION BY RICE, P. J., October 9, 1905 :

It is well settled in Pennsylvania that when a promissory note " clearly shows upon its face " that it has been altered in some material part, such as its date or the time or place of payment, it is incumbent on the party producing it and claiming under it to remove the suspicion thus raised as to the genuineness of the instrument by accounting for the alteration.     In such a case the note should not be admitted in evidence, except in connection with evidence tending to explain the alteration.     Heffner v. Wenrich, 32 Pa. 423 ; Hill v. Cooley, 46 Pa. 259 ; Hartley v. Corboy, 150 Pa. 23 ; Sunday v. Dietrich, 16 Pa. Superior Ct. 640, are cases in which this precise question arose and was decided in the way we have stated.     But in Clark v. Eckstein, 22 Pa. 507, which was an action against the indorser of a promissory note purporting to be dated in 1851, it appeared upon the face of the note at the last figure of the date that there was a blot of ink and an erasure ; that is, the paper showed that it had been scraped by some instrument.     The defendant contended that the date of the note had the appearance of having been changed by this erasure from 1850 to 1851.     He, therefore, objected to its admission in evidence without explanation.     The objection was overruled, and the court charged that the preliminary question

whether the erasure was an alteration of the date or a mere erasure of a blot was for the jury; but that if it was an alteration it avoided the note, unless shown by the evidence to have been made anterior to or at the time of the execution of the instrument, or with defendant's consent if subsequent to such execution. Upon writ of error taken by the defendant two questions were squarely raised : first, whether it was error to admit the note in evidence without explanation of the erasure ; second, whether it was error to submit to the jury the question whether it was an alteration of the date or a mere erasure of a blot. Justice KNOX, who delivered the opinion of the Supreme Court, first stated the rule applicable where a promissory note " clearly shows upon its face " that it has been altered in some material part, and then said : " But the preliminary question whether there has been an alteration, if doubtful, is for the jury. In the present case, the last figure in the date of the note upon which the suit was brought is blotted, and there appears at its side, an erasure, but whether it was the date or the blot that was attempted to be removed was properly left to the jury as a question of fact. " As the alleged alteration of the note in suit is not more clearly apparent upon inspection than was that which was the subject of investigation in the case cited, we cannot say that it was error to admit the note in evidence and to take the opinion of the jury upon the question of alteration. We remark in addition, that the plaintiff, in rebuttal, adduced direct and positive testimony that the note was in the same condition as when it was indorsed by the defendant. ' " It has often been ruled that if testimony, incompetent at the time of its admission becomes competent at a later stage in the trial, its admission is not cause for reversal :" Laird v. Campbell, 100 Pa. 159. It is not clear that the same ruling might not be made in this case. The first assignment is not sustained.

The excerpt from the charge contained in the fourth assignment of error does not fully express the idea which the charge as a whole conveyed to the jury. Taking it in connection with what precedes and what immediately follows, and bearing in mind that there was no request for specific instructions as to presumptions, we are of opinion that it contains no error of which the defendant can justly complain. For these

reasons the assignment is overruled.    But as the case must go back for another trial it is appropriate that we should consider the question sought to be raised by it.    In the leading case upon the subject Chief Justice GIBSON stated the rule as follows: " As notes and bills are intended for negotiation, and as payees do not usually receive them when clogged with impediments to their circulation, there is a presumption that such an instrument starts fair and untarnished, which stands till it is repelled ; and a holder ought, therefore, to explain why he took it branded with marks of suspicion which would probably render it unfit for his purpose:" Simpson v. Stackhouse, 9 Pa. 186.    This rule was enunciated at a time when parties were not competent witnesses, and it has been suggested that one of the reasons given for the rule, namely, that " without a presumption to sustain him, the maker would in every case be defenseless," does not now exist.    But notwithstanding the change in the law whereby in many cases parties have been made competent witnesses, the rule has been consistently adhered to : Paine v. Edsell, 19 Pa. 178 ; Heffner v. Wenrich, 32 Pa. 423 ; Hill v. Cooley, 46 Pa. 259 ; Nagle's Estate, 134 Pa. 31 ; Miller v. Stark, 148 Pa. 164 ; Hartley v. Corboy, 150 Pa. 23 ; Gettysburg Nat. Bank v. Chisolm, 169 Pa. 564 ; Bowers v. Rineard, 209 Pa. 545 ; Sunday v. Dietrich, 16 Pa. Superior Ct. 640 ; Alexander v. Buckwalter, 17 Pa. Superior Ct. 128. The very able opinion filed by the learned judge below contains a strongly persuasive argument in support of the proposition that the rule ought not to be extended to a case where there is nothing on the face of the paper to create suspicion, and the proof of alteration consists wholly of extraneous evidence.    On the other hand, it is argued by the appellant's counsel that if any distinction is to be made between a plain alteration, and an alteration evincing premeditation, care, and sufficient skill to prevent detection upon ordinary inspection, it should be the reverse of that suggested by the learned judge. But that precise question is not the one presented by the facts of this case, therefore we will express no opinion upon it. What is meant by the terms " apparent alteration " ?   Do they mean that it must be so apparent upon ordinary inspection as to leave no room for doubt ?    Clearly not, under the decisions. In Hill v. Cooley, 46 Pa. 259, the note on which suit was

brought was a printed blank with the spaces properly filled in writing. Commencing under the words "value received" and slanting upwards between them and the signature of the maker were written the words, "payable at N. Holmes & Son." This was held sufficient to bring the case within the rule laid down in Simpson v. Stackhouse. WOODWARD, J., speaking of the words last quoted said: "Had they been written in a straight line from where they started, they would have interfered with the signature, but they slant upward so as to avoid it, and thus give the paper a very suspicious aspect." In Gettysburg National Bank v. Chisolm, the allegation was that, after the note was signed, the words "with interest at 6 per cent" were interlined in writing between the partly written and partly printed line containing the amount of the note and the printed line, "without defalcation for value received." The only evidence upon the face of the note to sustain the defendant's contention, or to excite suspicion even, was that the words did not occupy the whole line, and they began a little to the right of the other lines. It was declared by Mr. Justice GREEN that this was sufficient to put the discounting bank upon inquiry. In neither of these cases did the appearance of the note conclusively indicate that there had been an alteration and preclude any other inference. In the present case the note bears some evidence on its face that the area covered by the due date had been scraped before the date was written, and stronger evidence that the figure 2 in the other date, January 29, was originally 1, and that the upper loop and the tail below were added to it so as to make the figure 2. These appearances do not conclusively show that there was an alteration either before or after signing, but they are "marks of suspicion," to adopt the words of Chief Justice GIBSON; they give the paper "a suspicious aspect," to adopt the words of Justice WOODWARD. We are inclined to the opinion that this is one of those doubtful cases in which the court is justified in submitting the preliminary question of alteration to the jury, as was done in Clark v. Eckstein, 22 Pa. 507, and Miller v. Stark, 148 Pa. 164. But in view of the equivocal and suspicious appearance of the note we are also of opinion that in the event of their finding that there was an alteration it would be their duty to find that the note was avoided, unless the altera-

tion be shown by the evidence to have been made anterior to or at the time of the indorsement, or with defendant's consent, if made subsequent thereto, or the case be brought within the last clause of sec. 124 of the act of 1901.

Sec. 124 of the negotiable instruments law provides as follows : " Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided except as against a party who has himself made, authorized or assented to the alteration, and subsequent indorsers.    But when an instrument has been materially altered, and is in the hands of a holder in due course not a party to the alteration, he may enforce payment thereof according to its original tenor : " Act of May 16, 1901, P. L. 194.    It is not claimed that the second clause of the section applies to the case, as it is presented by the pleadings and evidence, nor is the plaintiff attempting to recover otherwise than upon the note in its present condition.    Hence, evidence that the proceeds of the original note, of which this was the last of several renewals, were applied to the payment of the premium upon a policy of life insurance in which the defendant had an interest, was irrelevant to the issue.    It would have been inadmissible if it had been offered in the presentation of the plaintiff's case in chief.    It was equally so when offered in rebuttal.    The sole defense was that the note had been altered after it was indorsed, and no evidence, relevant or .irrelevant, had been given in support of that defense which brought in question the consideration of the original note, or the purpose for which it was given, or the application that was made of its proceeds.    In short, there is nothing ·in the pleadings or evidence that made this evidence admissible for any purpose.    In answer to the suggestion that it was admissible to counteract the possible influence of a statement made by the defendant's counsel, in opening his case to the jury, to the effect that his client was a mere accommodation indorser, it seems sufficient to say that there is no reason whatever to suppose that this result might not have been accomplished by an admonition to the jury that it was wholly immaterial whether he had an interest in the note other than that of a mere accommodation indorser or not.    Passing the .technical objection that the statements of counsel in opening

a case to the jury do not appear of record, we remark that it must be a very exceptional case indeed in which it can be held on appeal that the admission of evidence, otherwise irrelevant and inadmissible, is not erroneous when offered for the purpose above suggested. This is not such a case. The admission of irrelevant evidence is not always ground for reversal, but it is so where it has a tendency to draw the minds of the jury from the issue, and to prejudice, confuse or mislead them. Upon a full consideration of the question we are of opinion that the second assignment of error must be sustained.

The issue, under the pleadings, was whether the note was altered in a material part after it was indorsed by the defendant. But the court instructed the jury that, under the evidence, the question was " whether there was any alteration in the particulars claimed by the defendant before the negotiation of the note and after it was indorsed by the defendant." This was put upon the ground that the testimony of the plaintiff's witness that it was not altered after it came into the plaintiff's hands was uncontradicted. The fact testified to by the witness was a very important one. Possibly it would not, of itself, overthrow the defense and establish the plaintiff's case, but it was a step in that direction. Therefore it cannot be said that the instruction, even if erroneous, did not injure the defendant. Nor is that claimed by anyone. Was it erroneous? It is to be observed that the testimony did not relate to a question of fact concerning which the plaintiff would be expected to be informed, or to have the ability to produce testimony either one way or the other. Hence the nonproduction by him of counter testimony cannot be made the basis of an inference of fact or a presumption of law unfavorable to him. This alone is sufficient to distinguish the case from the concededly exceptional cases of Holland v. Kindregan, 155 Pa. 156, and Lonzer v. Lehigh Valley Railroad Co., 196 Pa. 610, and to prevent the application of the rule therein laid down. Furthermore, it is to be borne in mind that the witness is the officer of the plaintiff company with whom the discount of the note was negotiated by the maker ; therefore, it could not be asserted, certainly not by the court, that he went upon the witness stand wholly indifferent to the result of the trial. Suppose he had been the holder of the note and the plaintiff in the

case, and his testimony and his appearance and conduct upon the witness stand had been precisely the same as in this case, would the court have been warranted in charging the jury that they must accept his testimony as verity? We think no one would be willing to go quite as far as that. This is not an inapt illustration; for liability to pecuniary gain or loss from the event of the suit is not the only interest or motive which may be supposed to influence a witness and which a jury may take into consideration in determining as to his credibility. To establish a rule that would require the submission of the credibility of the witness to the jury in the supposed case, and would not require it in the present case would be illogical, unsound in principle and contrary to the overwhelming weight of authority. We find nothing in the testimony to incline us to make any imputation of lack of candor against the witness. So far as we can see he was candid and truthful. But we are not dealing with a rule which is to be applied or not applied in accordance with the opinion of the court as to the credibility of the witness. There are exceptions to it, it is true; but we are all of opinion that this case is not an exception to the general rule that when proof of a fact depends upon oral testimony, it is the province of the jury to decide, under instructions from the court as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence: Reel v. Elder, 62 Pa. 308 ; Madara v. Eversole, 62 Pa. 160; West Branch Bank v. Donaldson, 6 Pa. 179 ; Grambs v. Lynch, 4 Penny. 243 ; 20 W. N. C. 376 ; Lehigh Coal & Nav. Co. v. Evans, 176 Pa. 28 ; Lantner v. Kann, 184 Pa. 334; Barnett v. Becker, 25 Pa. Superior Ct. 22 ; Edwards v. Woodruff, 25 Pa. Superior Ct. 575, 582. In these, out of the many cases that might be cited, the question as to the applicability of the rule where the testimony of the witness is not contradicted, was raised and distinctly passed on. See also Gibson v. Western N. Y. etc, R. R. Co., 164 Pa. 142 ; Dinan v. Supreme Council, 210 Pa. 456 ; Cromley v. Penna R. R. Co., 211 Pa. 429. The fifth and sixth assignments are sustained.

Judgment reversed and a venire facias de novo awarded.