## Ritter, to use, v. Henry et al.

*Harry L. Siegel,* for plaintiff; *A. Reed Hayes,* for defendants.

LEHMAN, P. J., January 2, 1932.—This is a rule by the defendants to show cause why a certain judgment in the amount of $205 in favor of the use-plaintiff, William J. Showalter, and against the defendants, W. J. Henry and A. T. Henry, to No. 156, May Term, 1931, should not be opened and the defendants allowed to defend and answer thereto.

Judgment was entered upon a warrant of attorney contained in a certain promissory note executed by the defendants, purporting to be dated March 4, 1930, and payable in one year, to the order of Joseph Ritter. On February 28, 1931, Joseph Ritter assigned the note to William J. Showalter. Judgment was confessed on said note in the latter's favor on March 5, 1931, and on the same date a writ of fi. fa. was issued. By virtue thereof, the sheriff levied upon the defendants' personal estate, and on March 6, 1931, the defendants presented a petition praying that the judgment be opened and they be let into a defense. A rule to show cause was granted, all proceedings to be stayed in the meantime

and the lien of the levy to remain. The sole reason averred for opening the judgment was that the date of the note was fraudulently altered and was not genuine.

The defendants allege in their petition to open the judgment that the alleged date appearing on the note, to wit, March 4, 1930, is a forged and fraudulent date and not the date placed upon the note when it was signed, that the note was not executed or dated prior to March 11, 1930, and that, accordingly, the note was not due and payable on March 5, 1931, the date when judgment was confessed and execution issued.

The testimony taken on behalf of the defendants, in the form of depositions, is to the effect that A. T. Henry, one of the two defendants, was desirous of purchasing a team of horses and that he had attended farm sales with the thought in mind of procuring the same, that he had been unsuccessful in this respect on March 11, 1930, at the sale held by Joe Brower, as well as on March 13, 1930, when he attended the sale of his mother-in-law, Mrs. William Shank, each sale calling for more of a purchase price than he was willing to pay for a team of horses. After this last sale, the defendant, A. T. Henry, testified he went, on March 14, 1930, to Joseph Ritter and that Ritter agreed to sell him a team; that the note was executed and delivered in Ritter's home that evening in the presence of all four parties to this judgment, and the team was delivered the following day. The defendant further testifies that the note was in his, A. T. Henry's, handwriting and that the date was changed from March 14, 1930, to what now appears to be either March 4, 1930, or March 11, 1930.

The plaintiff, on the other hand, by sworn answer to the rule and in his deposition, has testified that the note for the horses was executed in Ritter's home on March 4, 1930, and that the date was not changed at any time. Ritter fixed the date from certain transactions as being March 4, 1930, the date he asserted now appears on the note.

The only expert opinion appearing in the depositions was that offered on behalf of the defendants. D. G. Meek testified that he is a bank cashier, has been in the banking business for about thirty years, and has been accustomed to seeing notes, their signatures and dates. This witness testified that in his opinion the date of the note had been changed from "something to a 4," that it appears to have been written with a different shade pencil and lead. W. W. Cunningham, the other expert witness called on behalf of the defendants, testified that he is an officer in a bank, has been connected with that bank for thirty-five years, and in that length of time has scrutinized the dates, amounts and signatures of a million or more notes. He stated that in his opinion the figures of the date were in a heavier hand than the body of the note, and that in his opinion the date of the note now reads "March 11, 1930."

Counsel for the plaintiff entered his objections to all the testimony of these two witnesses. The question of its admissibility will largely determine whether or not the judgment should be opened and defendants let into a defense. Each of these two witnesses modestly disclaimed being a "handwriting expert." Meek testified that in his opinion the date had been altered and was written in different pencil than the body of the note, which was admitted to be genuine. Cunningham did not give his opinion as to whether or not there was an alteration, but expressed himself as of the opinion that the date was in a heavier hand than the body of the note. He then gave his interpretation of the present reading of the date of the note as it was intended by the writer.

Prior to the Act of May 15, 1895, P. L. 69, witnesses were not permitted to compare disputed with admittedly genuine writings. That act, together with the amendment of June 6, 1913, P. L. 451, permits comparisons to be made by

three classes of persons: Those acquainted with the handwriting of the supposed writer, those who have had special experience with documents, handwriting and alterations thereof, and those who have pursued special studies relating thereto: Seaman et al. *v.* Husband, 256 Pa. 571, 575. The witnesses came fairly within the second class, "those who have had special experience with . . . documents, handwriting and alterations thereof." Meek testified that he is a bank cashier with thirty years of banking experience and has been accustomed to examining notes, signatures and dates. Cunningham stated that his knowledge of handwriting is derived from thirty-five years in the banking business and during that length of time he has scrutinized the dates, amounts and signatures of a million or more notes. As was stated in Seaman et al. *v.* Husband, supra: "If the witness was qualified as an expert under the provisions of the Acts of 1895 and 1913, his own modest disclaimer of being 'a handwriting expert' could make no difference." Surely the jury should be entitled to the opinion of a man who for thirty-five years has spent a large portion of that time in carefully scrutinizing handwriting on a million or more notes so that his bank, as well as its depositors, might receive the utmost protection possible from alterations and forgeries. The weight of his testimony is for the jury: Berkley *v.* Maurer, 41 Pa. Superior Ct. 171. The distinction between the first two classes of expert testimony regarding comparison of disputed with admittedly genuine writings is ably pointed out in the case last cited. It is well to keep in mind that the two witnesses in question do not profess to be acquainted with the handwriting of A. T. Henry, the supposed writer, but are seeking to be made competent witnesses by reason of their falling in the second classification, viz., "those who have had special experience with . . . documents, handwriting and alterations thereof."

That these two witnesses can qualify as experts to testify as to whether or not in their opinion there was an alteration of the date is clearly established. They are also competent to testify as to whether or not the handwriting of the date is genuine as compared with the body of the note admitted to be genuine: Seaman et al. *v.* Husband, supra. But a third question arises as to whether they could give their opinion as to the present deciphering or reading of the date of the note, i. e., what would appear to them as experts to have been the figures or letters intended by the writer and now presented for examination. This question is of great importance to the case at bar, in determining the maturity of the note as it now appears. It would appear that, if a witness is qualified to testify as to alterations and genuineness of handwriting by means of a comparison of writings in dispute with admittedly genuine writings, that witness is entitled, as well, to give his opinion by the same comparison as to what appears to him as an expert to have been the figures or letters intended by the writer. The special experience that would qualify him for the one thing would certainly qualify him as well for the other. "Those who have had special experience with . . . documents, handwriting and alterations thereof," as defined in the Acts of 1895 and 1913, may testify as to each one of the following matters: (a) alteration, (b) genuineness, and (c) interpretation or reading of questionable writing as to the figures or letters intended by the writer. It would, therefore, appear that each of these two witnesses is competent to testify on each of these particulars and the weight of their testimony is for the jury.

The writing in dispute is also for the examination of the jury, from which, together with all the evidence submitted, they alone must determine its genuineness and the date intended by the writer whose markings are now in dispute.

The only remaining question to be disposed of is whether or not there is enough evidence in the depositions to require us to open the judgment. A mere

conflict of evidence is not sufficient: Schultz *v*. Rudman, 81 Pa. Superior Ct. 239. But where there is reason to question the credibility of the witnesses or other matter of substantial doubt, the court as a chancellor may send the matter to a jury; but it is not bound to do so, and in general will not do so unless the evidence is such that the jury ought and probably would find in favor of the defendant. The whole proceeding resolves itself into the exercise of a sound judicial discretion: Cloud, Exec'r, *v*. Markle et al., 186 Pa. 614; Schultz *v*. Rudman, supra; Boyd *v*. Kirch, 234 Pa. 432.

This is a nonnegotiable note. Where there is no condition or restriction upon the entry of judgment, the warrant of attorney to confess can be exercised at any time prior to the debtor's death. It can be entered as a judgment before the debt is due: Integrity Title Insurance, Trust and Safe Deposit Co. *v*. Rau et al., 153 Pa. 488; Volkenand *v*. Drum, 143 Pa. 525; Pacific Lumber Co. *v*. Rodd, 287 Pa. 454. The fact that judgment can be entered on a note before maturity makes the note nonnegotiable: Milton National Bank *v*. Beaver, 25 Pa. Superior Ct. 494; Hoverter, to use, *v*. Consedine, 82 Pa. Superior Ct. 294. Inasmuch as there is no such restriction contained in the note in question, the assignee, Showalter, takes subject to any defenses that may exist between the original payee and makers. The defense of alteration of the date as set up by the defendants is important to the case at hand. By section 124 of the Negotiable Instruments Law of May 16, 1901, P. L. 194, a provision is made whereby a negotiable instrument is avoided where it has been materially altered, except as against a party who has himself made, authorized or assented to the alteration. Alteration of the date of a promissory note is alteration of a material part: Colonial Trust Co. of Reading *v*. Getz, 28 Pa. Superior Ct. 619. It is not at this time necessary to consider the presumptions and burden of proof relative to such matters, other than to note that the defense set up by the defendants, if properly made out, would avoid the note.

It is also held that on an application to open a judgment it is proper for the court to weigh the evidence and decide according to the preponderance thereof: Heimgartner *v*. Stewart, 180 Pa. 500; Cloud, Exec'r, *v*. Markle et al., supra.

It, therefore, appears that this is a proper case to be submitted to a jury. An application to open a judgment is addressed to the equitable powers of the court: Goldstein *v*. Fritzius, 41 Pa. Superior Ct. 219, 223.

Having determined that the expert testimony offered on behalf of the defendants is admissible, and one of the experts testifying to an alteration having been made and the other to an interpretation or reading of the questioned writing of the date different than is alleged by the legal and use-plaintiffs, and the testimony of the two defendants being contrary to that of the plaintiff, there is more than a mere conflict of evidence. There is definitely present the question of credibility of the witnesses, inasmuch as the testimony relative to the date of the sale and execution of the note is entirely divergent as between plaintiffs and defendants. The note itself is truly a matter for the consideration of a jury of twelve persons rather than one individual.

## Decree

Now, therefore, January 2, 1932, upon due consideration of the pleadings, the depositions and the arguments of counsel and the law submitted, it is ordered, adjudged and decreed that the rule to open the judgment and let the defendants into a defense is made absolute.

To this decree exception is noted for both parties and a bill is sealed for each.

From Robert Stuckenrath, Lewistown, Pa.